Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiffs*
*Moonbug Entertainment Limited and*
*Treasure Studio Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED and TREASURE STUDIO INC., | CIVIL ACTION No. ___ |
| *Plaintiffs* | |
| v. | |
| CHENGSHANGPENGRUIHANXIAN, CVBFRBHHK KEWYA LIMITED, CY GOOD PARTY FAVOR, DDBANMO, FENBBGUA, FSLF PARTYDECOR, FUHUIDE, FUSTAAR, GUANDONGYANGDEBEIMEIDIANPU, GUOCONGSACKJKXJKLJKLJKLAJFSASXCZ, HAIKOUSHIMALIANGMINGDIANZIKEJIYOUXIA NGONGSI, HEFEICOUKUANDIANZI, HUN HUN, JIAZHENG-US, JINANYANGLINMIXINDIANZISHANGMAOGONG ZUOSHI, KOUGAIDIANZISHANGWU, LANSEBB, LISHIBODEDIAN, LJIYQGAN, LUOLINL, MAGIC PARTY US, MOUYIJMB, MUMIAOBALLOON, NIZHIXINDEDIANPU, NVFJH, QUJINGYONGZHENGDIANZISHANGWUYOUXIA NGONGSII, RICH PARTY, SADF232SADF2332, SHANGJIANING123, TENSHON, INC, TOY4STORY, USLEH, WANGYIXIAODIAN, WANQIANBOOO, WEJUSA, WHEN QUN PARTY INC, WISMAT-US, | COMPLAINT

Jury Trial Requested

FILED UNDER SEAL |

WUSHUAIDEDIAN,
XIEWENHUIDEBEIMEIDIANPU,     XINCUNJI46,
XINTONGKO,    YANGYIXUANDE,    YMCAFZ,
YUANGUILIN, YUHUIMINDE, YUNGONGPARTY,
ZHIJIANGSHIZAOWEISHANGMAOYOUXIANGON
GSI, ZHONGHAO123, ZHOUXUEDE, ZHUOWEIDA,
张文-举 a/k/a ZHANG WEN-JU and 枝江市念追商贸
有限公司 a/k/a ZHIJIANG NIANZHUI TRADING CO.,
LTD,

*Defendants*

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiffs** | Moonbug Entertainment Limited ("Moonbug") and Treasure Studio Inc. ("Treasure") |
| **Defendants** | chengshangpengruihanxian, cvbfrbhHK KEWYA LIMITED, CY good party favor, ddbanmo, FENBBGUA, FSLF PartyDecor, fuhuide, Fustaar, guandongyangdebeimeidianpu, GuoCongSACKJKXJKLJKLAJFSASXCZ, haikoushimaliangmingdianzikejiyouxiangongsi, hefeicoukuandianzi, HUN HUN, Jiazheng-US, jinanyanglinmixindianzishangmaogongzuoshi, kougaidianzishangwu, LANSEBB, lishibodedian, LJIYQGAN, luolinl, Magic Party US, MOUYIJMB, mumiaoballoon, nizhixindedianpu, NVFJH, qujingyongzhengdianzishangwuyouxiangongsii, Rich Party, sadf232sadf2332, shangjianing123, Tenshon, Inc, TOY4STORY, USLEh, WANGYIXIAODIAN, WANQIANBOOO, WEJUSA, When Qun Party Inc, WISMAT-US, wushuaidedian, xiewenhuidebeimeidianpu, xincunji46, XintongKo, yangyixuande, YMCAFZ, yuanguilin, yuhuiminde, YunGongParty, ZhiJiangShiZaoWeiShangMaoYouXianGongSi, zhonghao123, zhouxuede, Zhuoweida, 张文-举 a/k/a Zhang Wen-ju and 枝江市念追商贸有限公司 a/k/a Zhijiang Nianzhui Trading Co., Ltd |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiffs |
| **New York Address** | 224 Madison Ave, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiffs' Complaint |

| | |
|---|---|
| **Application** | Plaintiffs' e*x parte* application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Miller Dec.** | Declaration of Robert Miller in Support of Plaintiffs' Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiffs' Application |
| **CoComelon Content** | A popular streaming media show and YouTube channel featuring 3D animation videos of both traditional nursery rhymes and original children's songs |
| **CoComelon Applications** | U.S. Trademark Serial Application Nos.: 88/681,262 for "COCOMELON" for goods in Class 28; 88/681,248 for "COCOMELON" for goods in Class 9; 88/681,253 for "COCOMELON" for goods in Class 25;  88/681,276 for "  " for goods in Class 25; and 88/681,270 for "  " for goods in Class 9 |
| **CoComelon Registrations** | U.S. Trademark Registration No. 6,375,368 for "COCOMELON" for goods in Class 16; 5,830,142 for "COCOMELON" for goods in Classes 9 and 41; 6,421,553 for "COCOMELON" for goods in Class 28; 6,521,784 for "COCOMELON" for |



goods in Class 25; 5,918,526 for " ﹂ " for goods in Classes 9 and 41; 6,895,835 for "

﹂ " for goods in Class 3;

6,895,863 for " ﹂ " for goods in

Class 9; 6,563,758 for " ﹂ " for goods in Class 25; 6,895,688 for "

﹂ " for goods in Class 25; and

6,931,433 for " ﹂ " for goods in Class 28

| **CoComelon Marks** | The marks covered by the CoComelon Registrations and CoComelon Applications |
|---|---|
| **CoComelon Works** | U.S. Copyright Registration Nos.: VAu 1-379- |

| | |
|---|---|
| | 978 covering JJ; VAu 1-322-038 covering Unpublished Family Characters 2017; VAu 1-319-613 covering Animal Characters 2017 and VAu 1-374-077 covering CoComelon Logo |
| **CoComelon Products** | A variety of consumer products including toys, apparel, backpacks and other gear |
| **Counterfeit Products** | Products bearing or used in connection with the CoComelon Marks and/or CoComelon Works, and/or products in packaging and/or containing labels and/or hang tags bearing the CoComelon Marks and/or CoComelon Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the CoComelon Marks and/or CoComelon Works and/or products that are identical or confusingly or substantially similar to the CoComelon Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said accounts are located in the U.S. or abroad) |

| | |
|---|---|
| **Financial Institutions** | Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Amazon, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiffs by and through their undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action involves claims for trademark infringement of Plaintiffs' federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiffs' federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); trademark infringement of Plaintiffs' unregistered trademarks in violation of 15 U.S.C. § 1125; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiffs' federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* and related state and common law claims, arising from the infringement of the CoComelon Marks and CoComelon Works, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiffs' CoComelon Products by Defendants.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

the same case or controversy.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiffs in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Amazon as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.      Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products

at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

d.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

e.    Upon information and belief, Defendants are aware of Plaintiffs, their CoComelon Products, CoComelon Marks and CoComelon Works, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiffs in the U.S. and specifically, in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.    Plaintiff Moonbug Entertainment Limited is a private limited company organized and existing under the laws of the United Kingdom, with an address of 3-6, 2nd Floor, LABS Upper Lock, Water Ln, London, NW1 8JZ, United Kingdom.

6.    Plaintiff Treasure Studio, Inc. is a domestic corporation with a principal place of business at 18100 Von Karman #400, Irvine, California 92612.

7.    Upon information and belief, Defendants are merchants on the Amazon online marketplace platform, through which Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the screenshots of Defendants' Merchant Storefronts in **Exhibit D**.

**GENERAL ALLEGATIONS**

**Plaintiffs and Their Well-Known CoComelon Content and CoComelon Products**

8.      Plaintiffs are global entertainment companies that that create and distribute inspiring and engaging stories to expand the worlds and minds of children under their own popular brands, such as CoComelon, Blippi, Little Baby Bum, Oddbods and Little Angel, as well as in partnership with prominent children's entertainment brands including Mattel Inc., Nickelodeon and LEGO.

9.      Plaintiffs are the owners of the intellectual property assets for the popular CoComelon Content.

10.     Established in 2006, and rebranded to the current CoComelon name in 2018, the CoComelon YouTube channel now has 155 million subscribers and was streamed for more than 37.8 billion minutes in 2022.

11.     As of January 28, 2023, the YouTube channel CoComelon was the second most subscribed to YouTube channel.

12.     On February 24, 2022, YouTube channel CoComelon became the second channel to surpass 130 million subscribers.

13.     The CoComelon Content is also distributed globally via a number of well-known platforms and channels including Netflix, BBC iPlayer, HBO Max and Hulu.

14.     In addition to distributing content, Moonbug and Treasure have also developed a variety of consumer products, such as t-shirts, backpacks and other gear, which is sold through the official CoComelon store at https://shop.moonbug.com/collections/cocomelon. ("CoComelon Products") and via popular retailers such as Amazon, Walmart and Target.  Images of the CoComelon Products are attached hereto as **Exhibit A**.

15.     The CoComelon Products typically retail for between $1.99-74.99.

16.     While Plaintiffs have gained significant common law trademark and other rights in their

CoComelon Products, through their use, advertising and promotion, Plaintiffs have also protected their

valuable rights by filing for and/or obtaining federal trademark registrations.

17.    For example, Moonbug is the owner of one of the CoComelon Registrations (i.e., U.S.

Trademark Registration No. 6,375,368 for "COCOMELON" for goods in Class 16) and Treasure is the

owner of the remaining CoComelon Registrations (i.e., U.S. Trademark Registration Nos. 5,830,142

for "COCOMELON" for goods in Classes 9 and 41; 6,421,553 for "COCOMELON" for goods in Class



28; 6,521,784 for "COCOMELON" for goods in Class 25; 5,918,526 for "  " for goods

in Classes 9 and 41; 6,895,835 for "  " for goods in Class 3; 6,895,863 for "

 " for goods in Class 9; 6,563,758 for "  " for goods in Class 25;

6,895,688 for "  " for goods in Class 25; and 6,931,433 for "  " for

goods in Class 28). Treasure also applied for the registrations of the CoComelon Applications (i.e.,

U.S. Trademark Serial Application Nos.: 88/681,262 for "COCOMELON" for goods in Class 28;

88/681,248 for "COCOMELON" for goods in Class 9; 88/681,253 for "COCOMELON" for goods in



Class 25; and 88/681,270 for "                    " for goods in Class 9) (the CoComelon Registrations

and CoComelon Applications are hereinafter collectively referred to as "CoComelon Marks"). True

and correct copies of the CoComelon Registrations and CoComelon Applications are attached hereto

as **Exhibit B** and incorporated herein by reference.

18.     The CoComelon Marks are currently in use in commerce in connection with CoComelon

Products.  The CoComelon Marks were first used in commerce on or before the dates of first use as

reflected in the CoComelon Registrations attached hereto as part of **Exhibit B**.

19.     In addition, Plaintiff Treasure is also the owner of registered copyrights in and related

to the CoComelon Products.

20.     For example, Treasure owns the CoComelon Works (i.e. U.S. Copyright Registration

Nos.: VAu 1-379-978 covering JJ; VAu 1-322-038 covering Unpublished Family Characters 2017;

VAu 1-319-613 covering Animal Characters 2017 and VAu 1-374-077 covering CoComelon Logo).

True and correct copies of the registration certificates for the CoComelon Works are attached hereto as

Exhibit C and incorporated herein by reference.

21.     The success of the CoComelon Products is due in part to Plaintiffs' marketing and

promotional efforts.  These efforts include advertising and promotion through social media, the

CoComelon YouTube Channel, and other internet-based advertising, among other efforts domestically

and abroad, including in New York.

22.     Plaintiffs' success is also due to their use of the highest quality materials and processes

in making the CoComelon Products.

23.     Additionally, Plaintiffs owe a substantial amount of the success of the CoComelon Products to their consumers and word-of-mouth buzz that their consumers have generated, in addition to the popularity of the CoComelon Content.

24.     Plaintiffs' efforts, the quality of CoComelon Products and the word-of-mouth buzz generated by their consumers, the CoComelon Marks, CoComelon Works and CoComelon Products have become prominently placed in the minds of the public.  Members of the public have become familiar with the CoComelon Marks, CoComelon Works and CoComelon Products and have come to associate them exclusively with Plaintiffs.  Plaintiffs have acquired a valuable reputation and goodwill among the public as a result of such associations.

25.     Plaintiffs have gone through great lengths to protect their interests in the CoComelon Marks, CoComelon Works and CoComelon Products.  No one other than Plaintiffs and their authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the CoComelon Marks and CoComelon Works without the express permission of Plaintiffs.

## Amazon and Defendants' User Accounts

26.     Amazon is an online marketplace and e-commerce platform that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products originating primarily from China,[2] among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

27.     Amazon is recognized as one of the leaders of the worldwide e-commerce and digital retail market and the company's net sales were $364.8 billion in the first nine months of 2022.[3]  Sales

---

[2] *See* Juozas Kaziukenas, *Chinese Sellers Are Building Brands on Amazon,* MARKETPLACE PULSE (Dec. 6, 2018), https://www.marketplacepulse.com/articles/chinese-sellers-are-building-brands-on-amazon.
[3] *Amazon Plans To Cut 18,000 Jobs, What To Expect?*, Forbes (Jan. 6, 2023), https://www.forbes.com/sites/greatspeculations/2023/01/06/amazon-plans-to-cut-18000-jobs-what-to-expect/?sh=49659da612b9.

to the U.S. make up a significant percentage of the business done on Amazon.[4] As of March 29, 2023, Amazon had a market capital of $1.02 trillion, making it the fifth most valuable company.[5]

28.      Many of the third-party merchants that have User Accounts with and operate Merchant Storefronts on Amazon, like Defendants, are located in China, who recently accounted for nearly half of all businesses on Amazon.[6]

29.      In 2021 alone, third-party merchants generated $390 billion in sales through User Accounts on Amazon.[7]

30.      Amazon aggressively uses the Internet and television, to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S.  In 2023 alone, Amazon spent approximately $32.6 billion on marketing.[8]

31.      As reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on Amazon,[9] and as recently addressed in news reports, an astronomical number of counterfeit and infringing products are offered for sale and sold on Amazon at a rampant rate.[10]

32.      Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts

---

*See* Amazon.com, Inc., Annual Report (Form 10-K) (Feb. 4, 2022).

[5] STOCK ANALYSIS (last visited Mar. 29, 2023), https://stockanalysis.com/stocks/amzn/market-cap/.

[6] John Herrman, *The Junkification of Amazon Why does it feel like the company is making itself worse?*, NEW YORK MAGAZINE (Jan. 30, 2023), https://nymag.com/intelligencer/2023/01/why-does-it-feel-like-amazon-is-making-itself-worse.html.

[7] Ryan Faist, Ten Jaw-Dropping Amazon Statistics for Sellers in 2022, CHANNEL KEY (Mar. 8, 2022), https://channelkey.com/top-ten-jaw-dropping-amazon-statistics-for-sellers-in-2022.

[8]    Daniel Pereira, *Is Amazon Profitable?*, THE BUSINESS MODEL ANALYST (Jan. 30, 2023), https://businessmodelanalyst.com/is-amazon-profitable/.

[9] *See, e.g., Apple Inc. v. Mobile Star LLC,* No. C17-1120 RAJ (W.D. Cal. Aug. 4, 2017) and *Diamler AG v. Amazon.com, Inc.*, 16-cv-00518-RSM (W.D. Wash. Mar. 11, 2019).

[10] Brittney Myers, *Some Shoppers Are Fleeing Amazon Because of Counterfeit Goods*, THE ASCENT (Jan. 17, 2023), https://www.fool.com/the-ascent/personal-finance/articles/some-shoppers-are-fleeing-amazon-because-of-counterfeit-goods/; *see* Brendan Case, *Amazon, Third-Party Sellers Spur Fake Goods, Group Says*, BLOOMBERG (Oct. 13, 2021), https://www.bloomberg.com/news/articles/2021-10-13/amazon-third-party-sellers-spur-counterfeit-boom-group-says#xj4y7vzkg.

and on their Merchant Storefronts on Amazon as well as potentially yet undiscovered additional online marketplace platforms.

33.    Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

34.    Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

35.    Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

### Defendants' Wrongful and Infringing Conduct

36.    Particularly in light of Plaintiffs' success with their CoComelon Products, as well as the reputation they have gained, Plaintiffs and their CoComelon Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiffs have amassed in their CoComelon Products, CoComelon Marks and CoComelon Works and Plaintiffs investigate and enforce against such activities.

37.    As part of these efforts, Plaintiffs authorized Epstein Drangel to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on Amazon.

38.    Through Epstein Drangel's investigative and enforcement efforts, Plaintiffs learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through

Defendants' User Accounts and Merchant Storefronts. Screenshots of listings for Counterfeit Products from Defendants' User Accounts and Merchant Storefronts are included in Exhibit D attached hereto and incorporated herein by reference.

39.    Defendants are not, and have never been, authorized by Plaintiffs or any of their authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the CoComelon Products or to use the CoComelon Marks and/or CoComelon Works, or any marks and/or artwork that are confusingly or substantially similar to the CoComelon Marks and CoComelon Works.

40.    Defendants' Counterfeit Products are nearly indistinguishable from Plaintiffs' CoComelon Products, only with minor variations that no ordinary consumer would recognize.

41.    During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in Exhibit D.

42.    Epstein Drangel confirmed that each Defendant is currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars through various payment processing services and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York. Epstein Drangel's findings are supported by Defendants' listings for Counterfeit Products and/or the checkout pages for the Counterfeit Products, which are included in Exhibit D.

43.     For example, below on the left is an image of one of Plaintiffs' CoComelon Products. Depicted further below is a listing for Defendant Magic Party US's Counterfeit Product ("Magic Party US Infringing Listing" and "Magic Party US Counterfeit Product," respectively). The Magic Party US Infringing Listing appears on Defendant BUAUA Merchant Storefront, https://www.amazon.com/s?me=A3OGSC36L1MYYF, and offers the Magic Party US Counterfeit Product for $13.99 per item, using, featuring and/or incorporating one or more of the CoComelon Marks and/or CoComelon Works in the descriptions and/or product images in the body of the listing. Further, the Magic Party US Counterfeit Product is virtually identical to one of Plaintiffs' CoComelon Products and features and/or incorporates one or more of the CoComelon Marks and/or CoComelon Works. There is no question that the Magic Party US Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' CoComelon Products or that the Magic Party US Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of one or more of the CoComelon Marks and/or CoComelon Works:

| **CoComelon Product** | **Defendant's Counterfeit Product** |
|---|---|
|  |  |

44.     By way of another example, below on the left is an image of one of Plaintiffs' CoComelon Products. Depicted further below is a listing for Defendant chengshangpengruihanxian's Counterfeit Product ("chengshangpengruihanxian Infringing Listing" and "chengshangpengruihanxian

Counterfeit Product," respectively).  The chengshangpengruihanxian Infringing Listing appears on Defendant chengshangpengruihanxian's Merchant Storefront, https://www.amazon.com/s?me=A1BLG69S9CGSVE, and offers the chengshangpengruihanxian Counterfeit Product for $23.99 per item, using, featuring and/or incorporating one or more of the CoComelon Marks and/or CoComelon Works and/or confusingly or substantially similar marks or artwork in the listing title and/or in the descriptions and/or product images in the body of the listing. Further, the chengshangpengruihanxian Counterfeit Product is virtually identical to one of Plaintiffs' CoComelon Products and features and/or incorporates one or more of the CoComelon Marks and/or CoComelon Works.  There is no question that the chengshangpengruihanxian Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' CoComelon Products or that the chengshangpengruihanxian Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of one or more of the CoComelon Marks and/or CoComelon Works:

| **CoComelon Product** | **Defendant's Counterfeit Product** |
|:---:|:---:|
|  |  |

45.     As another example, below on the left is an image of one of Plaintiffs' CoComelon Products.  Depicted further below is a listing for Defendant sadf232sadf2332's Counterfeit Product ("sadf232sadf2332 Infringing Listing" and "sadf232sadf2332 Counterfeit Product," respectively).  The

Dream Six Infringing Listing appears on Defendant sadf232sadf2332's Merchant Storefront, https://www.amazon.com/s?me=A130UNGDTJ9Q12, and offers the sadf232sadf2332 Counterfeit Product for $19.99 per item, using, featuring and/or incorporating one or more of the CoComelon Marks and/or CoComelon Works and/or confusingly or substantially similar marks or artwork in the descriptions and/or product images in the body of the listing. Further, the sadf232sadf2332 Counterfeit Product is virtually identical to one of Plaintiffs' CoComelon Products and features and/or incorporates one or more of the CoComelon Marks and/or CoComelon Works. There is no question that the sadf232sadf2332 Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' CoComelon Products or that the sadf232sadf2332 Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of one or more of the CoComelon Marks and/or CoComelon Works:

**CoComelon Product**



**Defendant's Counterfeit Product**



46.    By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiffs' exclusive rights in the CoComelon Marks and/or CoComelon Works, and have used marks and/or artwork that are

confusingly similar to, identical to, substantially similar to and/or constitute counterfeiting and/or infringement of the  CoComelon Marks and/or CoComelon Works in order to confuse consumers into believing that such Counterfeit Products are the CoComelon Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiffs' adoption and use of the CoComelon Marks and/or CoComelon Works, after Plaintiffs obtained federal registrations in the CoComelon Marks and CoComelon Works, as alleged above, and after Plaintiffs' CoComelon Products, CoComelon Marks and CoComelon Works became well-known to the purchasing public.

47.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the CoComelon Marks and CoComelon Works, of the fame and incalculable goodwill associated therewith and of the popularity and success of the CoComelon Products, and in bad faith adopted the CoComelon Marks and/or CoComelon Works.

48.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs, the CoComelon Marks, CoComelon Works and CoComelon Products.

49.    Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiffs, thereby damaging Plaintiff.

50.    By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the CoComelon Marks and/or CoComelon

Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiffs' expense.

51.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### (Trademark Counterfeiting)
#### [15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]

52.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

53.     Plaintiffs are the exclusive owners of all right and title to the CoComelon Marks.

54.     Plaintiffs have continuously used the CoComelon Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as Exhibit B.

55.     Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-known and prior rights in their CoComelon Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the CoComelon Marks and/or used spurious designations that are identical with, or indistinguishable from, the CoComelon Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

56.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiffs' rights in and to the CoComelon Marks through their participation in such activities.

57.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the CoComelon Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which they are not entitled in law or equity.

58.     Defendants' unauthorized use of the CoComelon Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs or their authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the CoComelon Marks.

59.     Defendants' actions constitute willful counterfeiting of the CoComelon Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

60.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiffs, their business, their reputation and their valuable rights in and to the CoComelon Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable CoComelon Marks.

61.     Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive

relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[115 U.S.C. § 1114/Lanham Act § 32(a)]**

62.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

63.    Plaintiffs have continuously used the CoComelon Marks in interstate commerce since on or before the dates of first use as reflected in the CoComelon Registrations attached hereto as Exhibit B.

64.    Plaintiffs, as owners of all right, title and interest in and to the CoComelon Marks and CoComelon Registrations, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

65.    Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiffs are the owners of the federal trademark registrations for the CoComelon Marks.

66.    Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiffs, as the registered trademark owners of the CoComelon Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the CoComelon Products and/or related products bearing the CoComelon Marks into the stream of commerce.

67.    Defendants knowingly and intentionally manufactured, imported, exported, advertised,

marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the CoComelon Marks and/or which are identical or confusingly similar to the CoComelon Marks.

68.    Defendants knowingly and intentionally reproduced, copied and colorably imitated the CoComelon Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

69.    Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiffs are the owners of all rights in and to the CoComelon Marks.

70.    Defendants' egregious and intentional use of the CoComelon Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiffs' CoComelon Products or are otherwise associated with, or authorized by, Plaintiffs.

71.    Defendants' actions have been deliberate and committed with knowledge of Plaintiffs' rights and goodwill in the CoComelon Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

72.    Defendants' continued, knowing, and intentional use of the CoComelon Registrations without Plaintiffs' consent or authorization constitutes intentional infringement of Plaintiffs' federally registered CoComelon Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

73.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged

herein, Plaintiffs have suffered substantial monetary loss and irreparable injury, loss and damage to their businesses and their valuable rights in and to the CoComelon Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and the valuable CoComelon Marks.

74.     Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(Infringement of Unregistered Trademarks)**
**[15 U.S.C. § 1125/Lanham Act § 43(a)]**

75.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

76.     Plaintiffs have continuously used the CoComelon Marks in interstate commerce since on or before the dates of first use as reflected in the CoComelon Applications attached hereto as Exhibit B.

77.     Plaintiff, Treasure, as the owner of all right, title and interest in and to the CoComelon Marks and CoComelon Applications has standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

78.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff Treasure is the owner of the CoComelon Marks.

79.     Defendants did not seek, and therefore necessarily failed, to obtain consent or

19

authorization from Plaintiff Treasure, as the trademark owner of the CoComelon Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell CoComelon Products and/or related products bearing the CoComelon Marks into the stream of commerce.

80.    Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products bearing and/or utilizing marks that are reproductions, copies and/or colorable imitations of the CoComelon Applications and/or which are identical or confusingly similar to the CoComelon Marks.

81.    Defendants knowingly and intentionally reproduced, copied and colorably imitated the CoComelon Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

82.    Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff Treasure is the owner of all rights in and to the CoComelon Marks.

83.    Defendants' egregious and intentional use of the CoComelon Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are CoComelon Products or are otherwise associated with or authorized by Plaintiff.

84.    Defendants' actions have been deliberate and committed with knowledge of Plaintiffs'

rights and goodwill in the CoComelon Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

85.     Defendants' continued, knowing and intentional use of the CoComelon Marks without Plaintiffs' consent or authorization constitutes intentional infringement of the CoComelon Applications in violation of §43 of the Lanham Act, 15 U.S.C. § 1125.

86.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiffs have suffered substantial monetary loss and irreparable injury, loss and damage to their business and their valuable rights in and to the CoComelon Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable CoComelon Marks.

87.     Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

88.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89.     Plaintiffs, as the owner of all right, title and interest in and to the CoComelon Marks have standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

90.     The CoComelon Marks are inherently distinctive and/or have acquired distinctiveness.

91.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the CoComelon Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are CoComelon Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the CoComelon Marks, to Defendants' substantial profit in blatant disregard of Plaintiffs' rights.

92.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiffs' CoComelon Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the CoComelon Marks, Defendants have traded off the extensive goodwill of Plaintiffs and their CoComelon Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiffs.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs and their CoComelon Marks, which Plaintiffs have amassed through its nationwide marketing, advertising, sales and

consumer recognition.

93.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the CoComelon Marks would cause confusion, mistake or deception among purchasers, users and the public.

94.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiffs, their CoComelon Products and CoComelon Marks.

95.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiffs by depriving Plaintiffs of sales of their CoComelon Products and by depriving Plaintiffs of the value of their CoComelon Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of the CoComelon Marks.

96.     Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Federal Copyright Infringement)**
**[17 U.S.C. § 501(a)]**

97.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

98.    Plaintiff Treasure is the exclusive owner of the CoComelon Works.

99.    Defendants had actual notice of Plaintiff's exclusive rights in and to the CoComelon Works.

100.    Defendants did not attempt and therefore inherently failed to obtain Plaintiffs' consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiffs' CoComelon Products and/or CoComelon Works.

101.    Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the CoComelon Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing products which bear such CoComelon Works, or artwork that is, at a minimum, substantially similar to the CoComelon Works.

102.    Defendants' unlawful and willful actions as alleged herein constitute infringement of the CoComelon Works, including Plaintiffs' exclusive rights to reproduce, distribute and/or sell such CoComelon Works in violation of 17 U.S.C. § 501(a).

103.    Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiffs in an amount as yet unknown but to be proven at trial, for which Plaintiffs have no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiffs.

104.    Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief, Plaintiffs' actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

105.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

106.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiffs and their CoComelon Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiffs.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which Plaintiffs have amassed through its nationwide marketing, advertising, sales and consumer recognition.

107.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiffs' rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

108.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

109.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant

disregard of Plaintiffs' rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

110.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiffs have been and will continue to be deprived of substantial sales of its CoComelon Products in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and Plaintiffs have been and will continue to be deprived of the value of their CoComelon Marks and CoComelon Works as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law.

111.    As a result of Defendants' actions alleged herein, Plaintiffs are entitled to injunctive relief, an order granting Plaintiffs' damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiffs' actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit

26

mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiffs may elect prior to the rendering of final judgment;

C.        For an award of Defendants' profits and Plaintiffs' damages in an amount to be proven at trial for willful trademark infringement of Plaintiffs' federally registered CoComelon Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.        For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.        For an award of Plaintiffs' actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the CoComelon Works under 17 U.S.C. § 501(a);

F.        In the alternative to Plaintiffs' actual damages and Defendants' profits for copyright infringement of the CoComelon Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiffs may elect prior to the rendering of final judgment;

G.        For an award of damages to be proven at trial for common law unfair competition;

H.        For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

ii.   directly or indirectly infringing in any manner any of Plaintiffs' CoComelon Marks and CoComelon Works;

iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' CoComelon Marks and CoComelon Works, to identify any goods or services not authorized by Plaintiffs;

iv.   using any of Plaintiffs' CoComelon Marks or CoComelon Works, or any other marks or artwork that are confusingly or substantially similar to the CoComelon Marks or CoComelon Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiffs;

28

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiffs;

viii.   engaging in any other act in derogation of Plaintiffs' rights;

ix.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.   providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.   instructing any other person or entity to engage or perform any of the activities

referred to in subparagraphs (i) through (xii) above; and

I.      For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiffs for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiffs' CoComelon Marks or CoComelon Works, or bear any marks and/or artwork that are confusingly or substantially similar to the CoComelon Marks or CoComelon Works;

J.      For an order of the Court requiring that Defendants deliver up for destruction to Plaintiffs any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiffs' CoComelon Marks or CoComelon Works, or bear any marks and/or artwork that are confusingly or substantially similar to the CoComelon Marks or CoComelon Works pursuant to 15 U.S.C. § 1118;

K.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

L.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiffs;

M.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

N.      For Plaintiffs' reasonable attorneys' fees;

O.      For all costs of suit; and

P.      For such other and further relief as the Court may deem just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims.


Dated: April 3, 2023                           Respectfully submitted,

                                               EPSTEIN DRANGEL LLP

                                               BY: _____
                                                   Gabriela N. Nastasi
                                                   gnastasi@ipcounselors.com
                                                   Jason M. Drangel (JD 7204)
                                                   jdrangel@ipcounselors.com
                                                   Ashly E. Sands (AS 7715)
                                                   asands@ipcounselors.com
                                                   Danielle S. Futterman (DY 4228)
                                                   dfutterman@ipcounselors.com
                                                   60 East 42nd Street, Suite 1250
                                                   New York, NY 10165
                                                   Telephone:    (212) 292-5390
                                                   Facsimile:    (212) 292-5391
                                                   *Attorneys for Plaintiffs*
                                                   *Moonbug Entertainment Limited and*
                                                   *Treasure Studio Inc.*